**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

ANTHONY RUCANO,

Plaintiff,

- v -                                              Civ. No. 9:12-CV-0035
                                                        (MAD/RFT)

**CARL J. KOENIGSMANN**, *Deputy Commissioner*
*and Chief Medical Officer*, **RITA GRINBERGS**, *Regional*
*Health Services Administrator*, **MARY D'SILVA**, *Director*
*of Correctional Dental Services*, **KAREN BELLAMY**,
*Director of Inmate Grievance Program*, **TAMIR R.**
**FAROOKI**, *Dental Director, Clinton Correctional Facility*,
**ROGERIO A. OLIVEIRA**, *Facility Dentist; Clinton*
*Correctional Facility*, **BRIAN FISCHER**, *Commissioner*,
**THOMAS LAVALLEY**, *Superintendent; Clinton*
*Correctional Facility*, **PAUL J. KULLMAN**, *Regional*
*Dental Director at Clinton Correctional Facility,*

Defendants.

**APPEARANCES:**                                   **OF COUNSEL:**

**ANTHONY RUCANO**
Plaintiff, *Pro Se*
11-A-0528
Clinton Correctional Facility
P.O. Box 2002
Dannemora, NY 12929

**HON. ERIC T. SCHNEIDERMAN**              **CHRISTOPHER W. HALL, ESQ.**
Attorney General of the State of New York    Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, NY 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

<u>REPORT-RECOMMENDATION and ORDER</u>

*Pro se* Plaintiff Anthony Rucano brings this civil rights action, pursuant to 42 U.S.C. § 1983,

alleging that Defendants failed to provide adequate dental care, or created and countenanced policies and procedures that led to the inadequate provision of dental care. *See generally* Dkt. No. 60, Second Am. Compl. Now before this Court is Defendants' Motion to Dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 64. Plaintiff opposes the Motion. Dkt. No. 68. For the reasons that follow we recommend that Defendants' Motion be **GRANTED** in part and **DENIED** in part.

## I.  STANDARD OF REVIEW

On a motion to dismiss, the allegations of the complaint must be accepted as true. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972). The trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984).

"Generally, in determining a 12(b)(6) motion, the court may only consider those matters alleged in the complaint, documents attached to the complaint, and matters to which the court may take judicial notice." *Spence v. Senkowski*, 1997 WL 394667, at *2 (N.D.N.Y. July 3, 1997) (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)). Moreover, "even if not attached or incorporated by reference, a document 'upon which [the complaint] *solely* relies and which is *integral to the complaint*' may be considered by the court in ruling on such a motion." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)).

The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *See Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn*, 373 U.S. 746, 754 n.6 (1963); *see also Arar v. Ashcroft*, 585 F.3d 559, 567 (2d Cir. 2009). Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted).

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. at 697 (citing *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678. This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. In this respect, to survive dismissal, a plaintiff "must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 440 U.S. at 555). Thus, in spite of the deference the court is bound to give to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts [which he or she] has not alleged, or that the defendants have violated the . . . laws in ways that have not been alleged." *Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983). The process of determining whether a plaintiff has "nudged [his] claims . . . across the line

from conceivable to plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. at 679-80.

With this standard in tow, we consider the plausibility of Plaintiff's Complaint.

## II.  DISCUSSION

### A.  Background

The following facts are derived from Plaintiff's Second Amended Complaint.[1]

On February 5, 2011, Plaintiff entered Downstate Correctional Facility ("DCF").  Second Am. Compl. at ¶ 13.  During the week of February 8, Plaintiff requested and received a visit with DCF's Dentist.[2]  *Id.* at ¶ 14.  At that appointment, Plaintiff relayed that prior to his incarceration, his personal dentist had started work on crowns[3] in three of his teeth by inserting temporary fillings, which were now "past due to be replaced with crowns, and [are] affecting the way I eat.  I chew slowly, carefully and am constantly nervous and afraid I will lose the fillings and the teeth."  *Id.* at ¶ 15.  Plaintiff also informed DCF's Dentist that his periodontist had told him that he had "advanced periodontal disease that required bone grafts to prevent continuing bone loss which would eventually result in the loss of my teeth, and work was scheduled to begin once my crowns were completed."  *Id.* at ¶ 16.  DCF's Dentist informed Plaintiff that "it was not within [New York State Department

---

[1] On June 6, 2013, this Court granted Plaintiff's Motion to Amend and directed the Clerk of the Court to file Plaintiff's Proposed Amended Pleading as his Second Amended Complaint.  Dkt. No. 59.  The Exhibits attached to the Proposed Amended Pleading were mistakenly not refiled by the Clerk.  Nevertheless, this section includes facts derived from the Exhibits attached to Plaintiff's Proposed Amended Pleading (Dkt. No. 47-2), which are incorporated by reference as part of Plaintiff's Second Amended Complaint.  *See Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).  All references to these Exhibits correspond to the Table of Contents provided by Plaintiff filed as Docket Number 47-3.

[2] DCF's Dentist is not a Defendant in this action.

[3] According to Plaintiff, "when a tooth receives a root canal, the inside of the tooth down to the root is removed which weakens the structural integrity of the tooth; and the placement of a post, permanent filling and crown secures the tooths integrity to prevent it from breaking apart."  Second Am. Compl. at ¶ 66.

of Corrections and Community Supervision's ("DOCCS")] Policy to provide crowns or bone grafts." *Id.* at ¶ 17. On February 23, 2011, Plaintiff filed a grievance regarding DCF's Dentist's refusal to provide him with crowns. *Id.* at ¶ 18.

On April 19, 2011, Plaintiff was put on the draft list to be transferred to Clinton Correctional Facility ("CCF"). *Id.* at ¶ 22. On May 17, 2011, Plaintiff received a letter from Defendant Grinbergs in response to a letter he wrote, concerning his dental issues, to Defendant Koenigsmann, Deputy Commissioner and Chief Medical Officer of DOCCS. *Id.* at ¶¶ 5 & 25. On June 13, 2011, Plaintiff wrote another letter to Defendant Grinbergs "to thank her for responding for Dr. Koenigsmann[,]" and received a response, dated June 27, informing him that "the Division of Health Services has investigated [his] concerns with the Health ervice staff at Clinton, and stated [he] was receiving treatment" and that he had been scheduled to see the Dentist. *Id.* at ¶¶ 27–29.

On September 9, 2011, Plaintiff met with Defendant Oliveira, the Dentist at CCF. Plaintiff explained to Defendant Oliveira that he had three teeth that required crowns, and stated that he was concerned he would lose his teeth if the work was not completed. Defendant Oliveira told Plaintiff that pursuant to § 7.02 of the Health Services Policy Manual ("HSPM") Plaintiff could get his own dentist to handle the crowns, but that he would not provide crowns for Plaintiff. *Id.* at ¶¶ 31–32. Plaintiff informed Defendant Oliveira that he could not afford to pay a private dentist to perform the procedure. *Id.* at ¶ 33. Defendant Oliveira's assistant, Louise Jerdo,[4] informed Plaintiff that if his temporary "fillings fell out they would just pull the teeth[.]" *Id.* at ¶¶ 31 & 34. On September 9, 2011, Plaintiff wrote to Defendants Grinbergs and Koenigsmann, however, neither Defendant responded. *Id.* at ¶¶ 39–40 & 42–43.

---

[4] Louise Jerdo is not a Defendant in this action.

On October 4, November 18, and December 23 of 2011, Defendant Oliveira conducted a systematic periodontal root planing of each of the four quadrants of Plaintiff's mouth; however, he continued to refuse to provide Plaintiff with crowns. *Id.* at ¶¶ 47, 48, & 49. After his final treatment, Plaintiff inquired about a follow up treatment, but was told by Defendant Oliveira that his treatment was complete and no other work was scheduled. *Id.* at ¶ 50.

In February and March of 2012, Plaintiff made "multiple"[5] requests for a dental appointment to treat tooth pain and to begin bi-annual root plaining. Eventually, an appointment was made for April 5, 2012. However, Plaintiff arrived at his appointment late and consequently was told by an unidentified guard that he would have to reschedule. *Id.* at ¶¶ 51–56. On April 23, 2012, Plaintiff requested an appointment with a doctor other than Dr. Oliveira, for root planing and pain in his tooth. *Id.* at ¶ 59. Plaintiff also filed a grievance regarding the events of April 5, stating that "[he] wrote [a] letter to Mary D'Silva (Director of Corr. Dental Services) requesting my semi-anual root planing for advanced periodontal disease and appt. for tooth pain by a dentist other th[a]n Dr. Oliveira, due to issues of retaliation and substandard treatment complained of in the past. <u>Need appt. ASAP.</u> Delay will result in unnecessary infection, pain and loss of teeth that is unnecessary and serves no penological purpose, in violation of my constitutional right to adequate medical care." *Id.* at ¶ 60 & Ex. F-3, Grievance #CL-62243-12, dated Apr. 23, 2012 (emphasis in original). On May 10, 2012, Plaintiff received a response to his grievance from the Inmate Grievance Resolution Committee ("IGRC ") stating "that [Plaintiff] did have a call-out on 4/5/12 for Dental but he was late. The grievant has been rescheduled." *Id.* at Ex. F-5. I.G.R.C. Response, dated May 10, 2012.

On May 11, Plaintiff was seen by Defendant Dr. Kullman, CCF's Regional Dental Director,

---

[5] The precise number of requests Plaintiff made is unclear from the Second Amended Complaint.

who examined Plaintiff and discovered that he had a cavity which required treatment; Plaintiff also informed Defendant Kullman of his need to replace his temporary fillings with permanent crowns in three of his teeth. *Id.* at ¶¶ 63–64. A dental treatment form filled out by Dr. Kullman notes that root planing was needed, tooth #5 required treatment for a cavity, and he would schedule another appointment for the treatment. *Id.* at ¶ 64A & Ex. G2, Dental Treatment Record, at entry dated May 11, 2012. When asked by Plaintiff to explain the function of crowns, Defendant Kullman

> explained that when a tooth receives a root canal, the inside of the tooth down to the root is removed which weakens the structural integrity of the tooth; and the placement of a post, permanent filling and crown secures the tooths integrity to prevent it from breaking apart. . . . [and] that having the crown placed on my teeth was not necessary now, but in a few years if you are still here we will give you crowns."

*Id.* at ¶ 66.

On June 12, 2012, Plaintiff was called to the dental clinic at CCF for an "emergency callout." Although his cavity was not treated, Defendant Oliveira took a full set of x-rays of Plaintiff's mouth. *Id.* at ¶ 68. On June 14, Plaintiff received a letter from Defendant Oliveira, stating in part, "'Generalized Advanced Chronic Adult Periodontal disease is present' and 'Teeth #04 and #19 are poorly endodontic treated. These teeth need retreatment of root canals, post and core and crowns. Stainless steel crowns are not indicated for these teeth. DOCCS does not provide offenders with root canals in posterior teeth. . . . You can either follow Form HSPM-7.02 and bring a dentist into the facility to treat them or alternatively we can extract and replace them with a partial removal denture.'" *Id.* at ¶ 69 & Ex. F6, Lt. dated June 14, 2012.

On October 26, 2012, Plaintiff saw Dr. Kullman for a second time. Notwithstanding Plaintiff's protestations that he was experiencing a problem with a tooth on the left side of his mouth, Defendant Kullman refused to look at Plaintiff's x-rays and put "another filling on top of a

temporary filling in tooth #4" located on the right side of Plaintiff's mouth.  *Id.* at ¶¶ 72–75.  On

November 26, 2012, Plaintiff submitted a sick call request form stating:

> I have cavity on upper left side of mouth, diagnosed on May 11, 2012.  I saw dentist on 10-26-12 who refused to look at full mouth x-rays until after he treated a temp filling on the right side of my mouth not causing pain.  My cavity is worsening, causing daily pain and I have had no treatment in it for over 6 months

*Id.* at ¶ 76.

On December 27, 2012 Plaintiff submitted an additional sick call request form stating that he had

a "[c]avity on front left top of mouth untreated for over 6 months. . . [and] [a]dvanced Periodontal

disease not treated with root scaling since Oct-Dec 2011.  Please schedule appt."  *Id.* at ¶ 77.

Plaintiff also submitted a note to Defendant Farooki regarding his concerns.  On December 31,

Plaintiff received a memo from the Dental Department notifying him that he was on the list to be

seen but that it was a "'[l]ong list, long wait.'"  *Id.* at ¶ 78.

On April 9, 2013, Plaintiff submitted his Second Amended Complaint.  As of that date,

Plaintiff had not received crowns, treatment for his cavity, nor any additional root planing for

treatment of his periodontal disease.  *Id.* at ¶¶ 79–80 & p. 52, Wherefore Clause.[6]

## B.  Eighth Amendment

Construed liberally, Plaintiff's fifty-seven page Second Amended Complaint alleges that

Defendant Oliveira (1) refused to provide him with crowns in three teeth, (2) improperly performed

a root planing procedure on the lower half of his mouth, and (3) delayed root planing treatments for

his advanced periodontitis.  *See, e.g.,* Second Am. Compl. at ¶¶ 145–55.  And, that Defendant

_____

[6] Plaintiff does not explicitly claim that as of April 9, 2013 he had still not been provided with crowns to replace three temporary fillings that were installed prior to his incarceration.  However, in Plaintiff's Wherefore Clause, he requests that an injunction be granted directing Defendants to provide "treatment to complete [his] partially completed crowns[.]"  Second Am. Compl. at p. 52, Wherefore Clause.

Kullman (1) failed to treat his cavity, and (2) delayed his treatment for root planing. *See, e.g., id.* at ¶¶ 180–90E. Defendants argue that Plaintiff has failed to state a cause of action under the Eighth Amendment. *See* Dkt. No. 64-1, Defs.' Mem. of Law, at pp. 7–12.

To state an Eighth Amendment claim for denial of adequate medical care, a prisoner must demonstrate that prison officials acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "[T]he plaintiff must allege conduct that is 'repugnant to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.'" *Ross v. Kelly*, 784 F. Supp. 35, 44 (W.D.N.Y.), *aff'd*, 970 F.2d 896 (2d Cir. 1992) (quoting *Estelle v. Gamble*, 429 U.S. at 102, 105-06). To state a claim for denial of medical care, a prisoner must demonstrate (1) a serious medical condition and (2) deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834-35 (1994); *Hathaway v. Coughlin ("Hathaway I")*, 37 F.3d 63, 66 (2d Cir. 1994).

The seriousness element is an objective test, to determine whether the deprivation of care is sufficiently serious "entails two inquiries." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) (citations omitted). First, courts must determine "whether the prisoner was actually deprived of adequate medical care." *Id.* Medical care is "adequate" where the care provided is a "reasonable" response in light of the "health risk" the inmate faces. *Id.* at pp. 279–80. The second inquiry requires a determination of "whether the inadequacy in medical care is sufficiently serious." *Id.* at p. 280. In cases where medical care is denied, courts focus on the seriousness of the underlying medical condition. *Id.* (citing *Smith v. Carpenter*, 316 F.3d 178, 185–86 (2d Cir. 2003). Some of the factors that determine whether a prisoner's medical condition is serious include: "1) whether a reasonable doctor or patient would perceive the medical need in question as important and worthy

of comment or treatment, 2) whether the medical condition significantly affects daily activities, and 3) the existence of chronic and substantial pain." *Brock v. Wright*, 315 F.3d 158, 162-63 (2d Cir. 2003) (internal quotation marks and citations omitted) (noting that an inmate is not required to show "that he or she experiences pain that is at the limit of human ability to bear, nor [does the court] require a showing that his or her condition will degenerate into a life threatening one").

Whereas, the "seriousness inquiry is narrower" in cases where "the prisoner is receiving on-going treatment and the offending conduct is an unreasonable delay or interruption in that treatment." *Salahuddin v. Goord*, 467 F.3d at 280 (citing *Smith v. Carpenter*, 316 F.3d at 185)). In such cases, courts "focus[] on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone." *Id.* The question becomes whether delaying treatment subjected Plaintiff to any serious risk of harm. To that end, the Second Circuit has instructed us that "the severity of the alleged denial of medical care should be analyzed with regard to all relevant facts and circumstances." *Smith v. Carpenter*, 316 F.3d at 187. In this regard, "the actual medical consequences that flow from the alleged denial of care will be highly relevant to the question of whether the denial of treatment subjected the prisoner to a significant risk of serious harm." *Id.* Determining whether the inadequacy/delay presents a sufficiently serious risk "requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Id.* (citing *Helling, v. McKinney*, 509 U.S. 25, 32–33 (1993)).

The second element, deliberate indifference, is based on a subjective standard. To establish deliberate indifference a plaintiff must demonstrate that the defendant acted with a culpable mental state, similar to criminal recklessness. *Wilson v. Seiter*, 501 U.S. 294, 301-03 (1991); *Hathaway I*, 37 F.3d at 66. A plaintiff must demonstrate that the defendant acted with reckless disregard to a

known substantial risk of harm. *Farmer v. Brennan*, 511 U.S. at 836. This requires "something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835; *see also Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996) (citing *Farmer*). Further, a showing of medical malpractice is insufficient to support an Eighth Amendment claim unless "the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Chance v. Armstrong*, 143 F.3d at 702 (quoting *Hathaway v. Coughlin ("Hathaway II")*, 99 F.3d 550, 553 (2d Cir. 1996)); *see also Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (citations omitted).

### 1. *Plaintiff's Crowns*

According to Plaintiff, Defendants' Oliveira and Kullman were aware that he required crowns in three of his teeth. Second Am. Compl. at ¶¶ 31–32, 63–64, 66, & 69. Additionally, Plaintiff has alleged that in a letter from Defendant Oliveira, and during a conversation with Defendant Kullman, these Defendants explicitly acknowledged that one possible consequence of not receiving crowns was that Plaintiff's teeth could collapse and end up needing to be removed. Nonetheless, Defendant Oliveira told Plaintiff that DOCCS' Policy did not permit him to provide Plaintiff with crowns and he could either pay to have an outside dentist perform the procedure – which he could not afford – or wait until his temporary fillings fell out, at which time he could have his teeth pulled. *See id.* at ¶¶ 32–34, 66, 69, & Ex. F6, Lt. dated June 14, 2012. Likewise, Defendant Kullman informed Plaintiff that he would install the crowns if Plaintiff was still at CCF "in a few years." *Id.* at ¶ 66. Plaintiff claims that Defendants' refusals were based on economic rather than medical reasons. *See, e.g., id.* at ¶¶ 32–36 & 42–43; Dkt. No. 68, Pl.'s Mem. in Opp'n, at pp. 5–7.

Defendants argue that Plaintiff has not alleged a sufficiently serious injury for purposes of the Eighth Amendment because he does not claim to be "suffering any substantial, chronic pain from the lack of crowns," and, that his desire for crowns is nothing more than a non-actionable dispute over the proper course of treatment. Defs.' Mem. of Law at p. 9. They point out that in his Second Amended Complaint, Plaintiff does not claim that he suffered from any pain due to the lack of crowns, rather he merely alleges that he "chews slowly, carefully and [is] constantly nervous and afraid [he] will lose the fillings in his teeth." *Id.* (quoting Second Am. Compl. at ¶ 15). However, while pain is one factor to be considered in assessing the seriousness of an underlying condition, the Second Circuit has held that "dental needs—for fillings, crowns, and the like—are serious medical needs as the law defines that term." *See Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) (quoting *Dean v. Coughlin,* 623 F. Supp. 392, 404 (S.D.N.Y.), *vacated on other grounds,* 804 F.2d 207 (2d Cir. 1986)).

While upon a fuller record it may be established that Plaintiff's condition was not sufficiently serious, at this early stage, Plaintiff's allegations that Defendants acknowledged but chose to ignore the possibility that if he did not receive crowns he would lose teeth that might otherwise be saved – for economic rather than medical reasons – is sufficient to plausibly allege that Defendants acted with deliberate indifference towards Plaintiff's sufficiently serious medical need for crowns. *See Chance v. Armstrong*, 143 F.3d at 703-04 (reversing the district court's 12(b)(6) dismissal of an inmate's claim that doctors chose to pursue a less efficacious treatment based on "ulterior" economic motives).

Therefore, we recommend that Defendant's Motion to Dismiss be **DENIED** as to Plaintiff's claims that Defendants Oliveira and Kullman refused to provide him with crowns.

*-12-*

## 2. Plaintiff's Cavity

Plaintiff has alleged that notwithstanding multiple requests for treatment of the cavity diagnosed by Defendant Kullman, the condition went untreated for more than ten months. Second Am. Compl. at ¶¶ 63 & 76–79. Defendants argue that Plaintiff has failed to allege that his cavity was a sufficiently serious condition for purposes of the Eighth Amendment because Plaintiff did not allege that this condition caused him substantial pain or that it affected his ability to go about his daily activities. Defs.' Mem. of Law at p. 11.

The Second Circuit has noted "that a tooth cavity is a serious medical condition, not because cavities are always painful or otherwise dangerous, but because a cavity that is not treated will probably become so." *Brock v. Wright*, 315 F.3d 158, 163 (2d Cir. 2003) (citing *Harrison v. Barkley,* 219 F.3d 132, 137 (2d Cir. 2000) for the proposition that "a tooth cavity is a degenerative condition, and if it is left untreated indefinitely, it is likely to produce agony and to require more invasive and painful treatments, such as root canal therapy or extraction"). Moreover, although Plaintiff did not complain about his cavity on a daily basis, in November and December of 2012 he requested treatment for his cavity, noting that "[m]y cavity is worsening, causing daily pain and I have had no treatment in it for over 6 months." Second Am. Compl. at ¶¶ 76–79. Thus, it is plausible that Plaintiff's cavity was a sufficiently serious condition for purposes of the Eighth Amendment.

Moreover, Plaintiff's allegations that despite their awareness of the cavity, and his requests for treatment, Defendants continued to ignore his condition for approximately ten months, is sufficient at this early stage to plausibly allege that Defendants consciously disregarded his cavity.

For these reasons we recommend that Defendant's Motion be **DENIED** as to Plaintiff's

Eighth Amendment claim regarding Defendants Kullman's and Oliveira's failure to treat his cavity.

### 3. Plaintiff's Periodontal Disease

Plaintiff has alleged that (1) Defendant Kullman's failure to schedule follow up appointments for routine root planing, despite acknowledging that Plaintiff required further treatment for his periodontal disease, Second Am. Compl. at ¶¶ 188–90; and (2) Defendant Oliviera's substandard provision of dental planing, and his failure to schedule a follow up treatment for future planing, constituted deliberate indifference toward the treatment of his condition, *id.* at ¶¶ 150–52.

For purposes of the instant Motion, Defendants concede that periodontal disease is a serious medical condition, and we agree. *See* Defs.' Mem. of Law. at p. 9; *see also Rashid v. McGraw,* 2006 WL 1378945,*1 (S.D.N.Y. May 18, 2006) ("Periodontitis, like gingivitis, is a serious infection of the gum area, that, if left untreated, can lead to tooth loss. As the disease progresses, gums separate from the teeth, forming pockets (spaces between the teeth and gums) that become infected. Pockets deepen as the disease progresses and more gum tissue and bone are destroyed.") (citation omitted).

To begin with, we note that performing a procedure negligently does not amount to deliberate indifference. Here, Plaintiff alleges that Defendant Oliveira failed to properly plane the roots in the bottom quadrants of his mouth, because he performed the procedure to quickly and did not draw any blood, as is typical during such a procedure. *See, e.g.,* Second Am. Compl. at ¶¶ 150–51. Even if true, such behavior does not evince a conscious disregard to a known serious risk of harm; at most, such a claim sounds in negligence or medical malpractice, neither of which is tantamount to deliberate indifference. *See Estelle v. Gamble,* 429 U.S. 97, 106 (1976) ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.").

*-14-*

Contrariwise, Plaintiff's remaining claims against these Defendants are sufficient to state a cause of action. Dr. Oliveira provided Plaintiff with root planing between October and December of 2011. Second Am. Compl. at ¶¶ 47, 48, & 49. On May 11, 2012, Defendant Kullman noted in a medical report that further root planing was needed, but did not schedule an appointment. *Id.* at ¶¶ 64A & 71. On June 14, 2012, Defendant Oliveira sent Plaintiff a letter noting that advanced periodontal disease was present, and that two of his teeth needed root canals and crowns. *Id.* at ¶ 69 & Ex. F6, Lt. dated June 14, 2012. Nonetheless, as of the filing of Plaintiff's Second Amended Complaint, on April 9, 2013, Plaintiff had not received any additional treatment for his periodontal disease. Second Am. Compl. at ¶ 80. Defendants' failure to provide further periodontal care to Plaintiff, despite their explicit acknowledgments of his continuing need for such care, evinces a conscious disregard of Plaintiff's serious medical need.[7] While upon a fuller record, Defendants' contentions that Plaintiff received adequate care for his periodontal disease may be born out, at this early stage Plaintiff has sufficiently alleged an Eighth Amendment claim for deliberate indifference.

Therefore, we recommend that Defendants' Motion to Dismiss be **DENIED** as to Plaintiff's claims that Defendants Oliveira and Kullman were deliberately indifferent towards the care of his periodontal disease.

### C. Personal Involvement

An individual cannot be held liable for damages under § 1983 merely because he holds a position of authority, but he can be held liable if he was personally involved in the alleged deprivation.

---

[7] In addition, we note that Plaintiff alleges that Defendants' decision not to provide further treatment for his periodontitis was based on ulterior economic concerns rather than his actual dental needs. *See* Pl.'s Mem. in Opp'n at p. 12; *see also Chance v. Armstrong*, 143 F.3d at 703-04.

The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citations omitted).

Defendants claim that Plaintiff failed to allege the personal involvement of Defendants Carl J. Koenigsmann, the Deputy Commissioner and Chief Medical Officer at DOCCS, Karen Bellamy, Director of the Inmate Grievance Program at DOCCS, Brian Fischer, the Commissioner of DOCCS, and Thomas LaValley, the Superintendent at CCF. Defs.' Mem. of Law at pp. 12–15.

### 1. Defendant Koenigsmann

Plaintiff alleges that he wrote Defendant Koenigsmann three letters describing the inadequacies of his dental care. Defendant Koenigsmann referred two of those letters to Defendant Grinbergs, who replied to Plaintiff on behalf of Defendant Koenigsmann on May 17 and June 27, 2011. *See, e.g.,* Second Am. Compl. at ¶¶ 82–87. Defendant Koenigsmann did not respond to Plaintiff's third letter, dated September 9, 2011, in which Plaintiff alleged that Defendant Kullman and Oliveira refused to provide him with crowns pursuant to an unconstitutional DOCCS' Policy. *Id.* at ¶¶ 40–43 & 83–87; *see also* Dkt. No. 1-1., Compl., Ex. B-13, Lt., dated Sep. 9, 2011. It was once well accepted that neither ignoring an inmate's letter nor referring his letters to a subordinate constituted personal involvement on behalf of a supervisory official. *See Thomas v. Coombe*, 1998 WL 391143, at *6 (S.D.N.Y. July 13, 1998) (citations omitted) (ignoring letter is insufficient for personal involvement); *Silvagnoli v. Fischer*, 2010 WL 1063849, at *8 (N.D.N.Y. Mar. 1, 2010)

(citing *Smart v. Goord*, 441 F. Supp. 2d 631, 642-43 (S.D.N.Y. 2006) for the proposition that "[i]t is now well-settled that the failure of a supervisory official to investigate a letter of protest written by an inmate is not sufficient to show personal involvement"; & *Ortiz-Rodriguez v. N.Y. State Dep't of Corr. Servs.*, 491 F. Supp. 2d 342, 347 (W.D.N.Y. 2007) for the proposition that "[t]he same is true if the only involvement of the supervisory official is to refer the inmate's complaint to the appropriate staff for investigation."). However, in light of the Second Circuit's recent decision in *Grullon v. City of New Haven*, it would appear that plaintiffs within the Second Circuit are "entitled to have the court draw the reasonable inference . . . that the [official] in fact received the Letter, read it, and became aware of the alleged conditions of which [the inmate] complained." *See Castro v. Heath*, 2013 WL 5354241, at *8 (N.D.N.Y. Sept. 23, 2013) (MAD) (quoting *Grullon v. City of New Haven,* 720 F.3d 133, 141 (2d Cir. June 19, 2013)).

As to the first two letters, it is clear that Defendant Koenigsmann acted upon those letters by referring them to his subordinate. *See Ortiz-Rodriguez v. N.Y. State Dep't of Corr. Servs.*, 491 F. Supp. 2d at 347. However, affording Plaintiff the benefit of this inference, it is possible that Plaintiff's third letter to Defendant Koenigsmann put him on notice of a continuing violation of Plaintiff's Eighth Amendment rights, and he failed to take any action to remedy the wrong. *See Colon v. Coughlin*, 58 F.3d at 873. Therefore, we recommend that Defendants' Motion be **DENIED** as to Defendant Koenigsmann.

### 2. *Defendant Bellamy*

Plaintiff claims that Defendant Bellamy is liable because of her supervisory role over the voting members of the Central Office Review Committee ("CORC"), an entity within DOCCS that reviewed and decided the final level of Plaintiff's grievance appeals. Second Am. Compl. at ¶¶

127–129. Construed liberally, it appears that Plaintiff believes Defendant Bellamy failed to ensure that the voting members of CORC were properly trained to understand inmate medical issues. *See id*. at ¶¶ 127–129. Even if true, such a failure is not actionable under § 1983. *See Abdush-Shahid v. Coughlin*, 933 F. Supp. 168, 183 (N.D.N.Y. 1996) (citing cases for the proposition that "supervisory officials are also generally entitled to delegate medical responsibility to facility medical staffs and are entitled to rely on the opinion of medical staff concerning the proper course of treatment."). Moreover, there is no apparent supervisory link between Defendants Kullman and Oliveira and Defendant Bellamy, therefore, Plaintiff has failed to allege her personal involvement in the alleged Eighth Amendment deprivations caused by Defendants Kullman and Oliveira. *See Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir. 1999) (finding that in the absence of *respondeat superior*, supervisory liability is found only where some act or omission of the supervisory official is the proximate cause of the constitutional violation); *see also Russo v. City of Bridgeport*, 479 F.3d 196, 211 (2d Cir. 2007) (a supervisory official may be held liable for "gross negligence in failing to supervise his subordinates who commit such wrongful acts, provided that the plaintiff can show an affirmative causal link between the supervisor's inaction and [his] injury") (quoting *Poe v. Leonard,* 282 F.3d 123, 140 (2d Cir.2002).

Alternatively, Plaintiff argues that Defendant Bellamy is "personally involved and appropriately named in this action for the purposes of discovery to ascertain the voting members present in deciding the Plaintiff's grievance, including determining the information requested by the voting members in any form that was gathered, acquired, used or consulted in reaching the final determination on the grievance." *Id.* at ¶ 130. Although courts within the Second Circuit have permitted a named defendant who lacked personal involvement in the underlying constitutional

violation to remain a defendant solely for the purposes of discovery, such exceptions are typically granted only where the plaintiff was legitimately unable to identify the true identity of any other defendant named in the action without the benefit of first conducting some limited discovery. *See, e.g., Murphy v. Goord*, 445 F. Supp. 2d 261, 266 (W.D.N.Y. 2006) (citing *Covington v. Warden of C–95*, 1996 WL 75211 at *4 (E.D.N.Y. Feb.8, 1996)); *see also Reed v. Doe No. 1*, 2013 WL 5441503, at *8 fn.5 (N.D.N.Y. Sept. 27, 2013) (citing *Davis v. Kelly*, 160 F.3d 917, 921–22 (2d Cir. 1998)).

Here, Plaintiff has not named any Doe Defendants. Moreover, to the extent that Plaintiff seeks discovery of relevant information, Plaintiff has named other supervisory officials in this action which Defendants have not moved to dismiss.[8] *Compare* Second Am. Compl., *with* Defs.' Mem. of Law. Therefore, it is unnecessary to allow Plaintiff to continue his action against Defendant Bellamy in the absence of some indication that she was personally involved in the deprivations allegedly caused by Defendants Oliveira and Kullman.

Accordingly, we recommend that Defendants' Motion be **GRANTED** as to Plaintiff's claims against Defendant Bellamy.

### 3. Defendant Fischer

Plaintiff claims that Defendant Fischer is liable for actions he took (or failed to take) while acting as Commissioner of DOCCS. Specifically he alleges that Defendant Fischer (1) failed to remedy certain unconstitutional policies that he was alerted to *via* a 2009 report entitled "Healthcare in New York State Prisons, 2004–2007" written by the "Corrections Association", (2) and for his gross negligence in failing to supervise Defendant Koenigsmann. Second Am. Compl. at ¶¶ 156–68.

---

[8] By their Motion, Defendants do not seek dismissal of Defendants Grinbergs, D'Silva, nor Farooki.

Defendant Fischer "may be found liable for his deliberate indifference to the rights of others by his failure to act on information indicating unconstitutional acts were occurring or for his gross negligence in failing to supervise his subordinates who commit such wrongful acts, provided that the plaintiff can show an affirmative causal link between the supervisor's inaction and her injury" *Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002).

Plaintiff does not allege that Defendant Fischer was personally involved in any aspect of his dental care. Moreover, Plaintiff has not plausibly alleged that Defendant Fischer was aware that Plaintiff's constitutional rights were being violated. Plaintiff's claim that the Correction Association's report regarding healthcare provided to prisoners in New York State between 2004 and 2007 put Defendant Fischer on notice of the care actually received by Plaintiff in 2011-2013 is patently implausible. Moreover, a review of the report offered by Plaintiff reveals that it does not directly relate to dentistry, dental care, nor the named Defendants. In fact, the word dentist does not appear at all in the report nor does the report conclude anywhere that dental care at Clinton was constitutionally inadequate. Second Am. Compl. at Ex. G-11. Accordingly, it is equally implausible to suggest that Defendant Fischer's awareness of the unrelated state-wide issues presented in the report put him on notice of the potential that Plaintiff would suffer constitutional harm at the hands of Defendants Kullman and Oliveira. *See Colon v. Coughlin*, 58 F.3d at 873.

Next, Plaintiff claims that Defendant Fischer was grossly negligent in his supervision of Defendant Koenigsmann because he failed to ensure that Defendant Koenigsmann properly implemented DOCC's Quality Improvement Program and that he properly supervised Defendant D'Silva, DOCCS' Dental Director. Second Am. Compl. at ¶¶ 162–68. According to Plaintiff, it was Fischer's responsibility to ensure that Defendant Koenigsmann held Defendant D'Silva accountable

for her responsibilities to (1) update HSPM § 2.01, (2) utilize the Dental Review Committee to assist in complying with policies, and to investigate health complaints, and (3) insure that Facility Dental Directors were effectively applying Dental Care Policies at CCF. *Id*. at ¶¶ 165–68.

According to the Second Circuit:

> a supervisor may be liable for failing to screen or otherwise inquire about his subordinates . . . actions. . . . To be liable under section 1983 for his failure to inquire, he must first have been on notice that his subordinate was prone to commit some unconstitutional or unacceptable behavior. Such notice could be actual (for example, awareness of prior deprivations in a related context), or it could be constructive (for instance, notice arising from a preexisting duty). . . .

*Poe v. Leanard*, 282 F.3d at 141–42.

Here, Plaintiff points out several aspects which he believes could have been handled better by Defendants Koenigsmann and D'Silva, yet he fails to allege any facts from which it could plausibly be concluded that Defendant Fischer was, or should have been, aware of the allegedly deficient performance of his subordinates. "[T]he mere fact that a subordinate may have deprived an inmate of a constitutional right, without more, will not support a claim against that subordinate's supervisor." *Felix-Torres v. Graham*, 687 F. Supp. 2d 38, 62 (N.D.N.Y. 2009). Moreover, as mentioned above, the report Plaintiff offers is primarily focused on unrelated medical and staffing issues and does not involve dental care generally nor Defendants Koenigsmann and D'Silva. Therefore, Plaintiff has failed to plausibly allege that Defendant Fischer knew of, or should have known, that either of his subordinates required greater supervision. Consequently, Plaintiff has failed to state a plausible claim that Defendant Fischer's supervision of either Defendant was grossly negligent. *See Pettus v. Morgenthau*, 554 F.3d 293, 300 (2d Cir. 2009) citing *Poe v. Leanard,* 282 F.3d at 140 & *Iqbal v. Hasty,* 490 F.3d 143, 166 (2d Cir.) *cert. granted sub nom. Ashcroft v. Iqbal*, 554 U.S. 902 (2008) for the proposition that "[t]o the extent that the complaint attempts to assert a

failure-to-supervise claim, . . . it lacks any hint that [defendant] acted with deliberate indifference to the possibility that his subordinates would violate [plaintiff's] constitutional rights."); *see also Poe v. Leonard*, 282 F.3d at 140 n.14 ("We have often equated gross negligence with recklessness, and have defined it as the 'kind of conduct . . . where [the] defendant has reason to know of facts creating a high degree of risk of physical harm to another and deliberately acts or fails to act in conscious disregard or indifference to that risk.'") (quoting *Bryant v. Maffucci,* 923 F.2d 979, 985 (2d Cir. 1991)).

Accordingly, we recommend that Defendants' Motion be **GRANTED** as to Plaintiff's claims against Defendant Fischer.[9]

### 4. *Defendant LaValley*

Plaintiff claims that Defendant LaValley, CCF's Superintendent, is liable in his supervisory capacity for the alleged constitutional violations of Defendants Oliveira and Kullman, because (1) "despite having actual knowledge through his administrative oversight of the FHSD, through his operation and participation of the Quality Improvement Program and in the [Quality Improvement] Committee, and through his knowledge and awareness of grievances appealed through his office, had allowed and condoned the Policies and Customs which resulted in unconstitutional practices occurring." Second Am. Compl. at ¶¶ 169–79.

Construed liberally, Plaintiff has alleged that Defendant LaValley was aware of the alleged constitutional violations which Plaintiff experienced at CCF yet took no action to remedy the situation. Plaintiff's allegations that Defendant LaValley learned of the alleged constitutional

---

[9] In light of this recommendation, there is no need for us to address Defendants' request to dismiss, pursuant to the Eleventh Amendment, the monetary claims asserted against Defendant Fischer in his official capacity.

deprivations *via* his administrative oversight of the FHSD, participation in the Quality Improvement Committee, or through the grievances appealed through his office, are purely speculative and conclusory. Plaintiff failed to allege with any specificity how the alleged report generated by the FHSD, complaints received by the Quality Improvement Committee, or the grievances appealed through his office related directly to Plaintiff's allegedly deficient dental care.

Moreover, although Plaintiff grieved these issues on two occasions, once while at DCF, and once while at GCF, there is nothing in the record from which it would be reasonable to infer that Defendant LaValley, the Superintendent of CCF, ever saw either grievance. *See, e.g.,* Second Am. Compl. at ¶¶ 18–21, 60 & Ex. F-3, Grievance #CL-62243-12. Plaintiff's first grievance was filed at DCF, and although he appealed the decision of the IGRC to the Superintendent, that grievance was handled by DCF's Superintendent, not Defendant LaValley the Superintendent of CCF. *See id.* at Ex. A-3, Superintendent's Response, dated Mar. 24, 2011. Moreover, while Plaintiff filed a grievance regarding his dental care while at CCF, he does not allege that he appealed the decision of the IGRC to the Superintendent. Second Am. Compl. at ¶ 60 & Ex. F-5, I.G.R.C. Response, dated May 5, 2012. Thus, Plaintiff has failed to plausibly allege that Defendant LaValley was aware of the alleged constitutional violations of which Plaintiff now complains, or that he had any reason to suspect that his subordinates would violate Plaintiff's constitutional rights. *See Pettus v. Morgenthau*, 554 F.3d at 300; *see also Poe v. Leonard*, 282 F.3d at 140 n.14.

Therefore, we recommend that Defendants' Motion be **GRANTED** as to Plaintiff's claims against Defendant LaValley.

### D. Corrections Law § 24

In addition to his federal claims, Plaintiff also raises pendent state law negligence and

medical malpractice claims against each of the named Defendants. Second Am. Compl. at ¶¶ 191–239. A federal court exercising pendent jurisdiction must apply state law. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1996). "Thus, if state law does not recognize a plaintiff's right to bring an action in state court, a federal court, exercising pendent jurisdiction, sitting as a state court, must follow the state law limitation on jurisdiction." *Livingston v. Griffin,* 2007 WL 2437433, at *2 (N.D.N.Y. Aug. 22, 2007) (citing *Baker v. Coughlin,* 77 F.3d 12, 15 (2d Cir. 1996)).

New York Corrections law § 24 precludes "the assertion of claims against corrections officers [in their personal capacities] in any court, including the federal courts," by designating the New York State Court of Claims as the only available venue to bring a claim for damages arising out the acts committed by corrections officers within the scope of their employment.[10] *Baker v. Coughlin,* 77 F.3d at 15. And, because the Court of Claims is a court of limited jurisdiction, hearing only claims against New York State and no other individual or entity, § 24 amounts to a grant of immunity for corrections officers sued in their personal capacities for claims arising out of the discharge of their duties. N.Y. CT. CLMS. LAW § 9.

Plaintiff contends that when used to relegate to the Court of Claims civil rights actions brought pursuant to 42 U.S.C. § 1983, § 24 is inconsistent with the Supremacy Clause, U.S. Const. Art. VI, cl. 2, and therefore, pursuant to the Supreme Court's decision in *Haywood v. Drown*, 556

---

[10] N.Y. CORR. LAW § 24 states that:
1. No civil action shall be brought in any court of the state, except by the attorney general on behalf of the state, against any officer or employee of the department, in his personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee.

2. Any claim for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties of any officer or employee of the department shall be brought and maintained in the court of claims as a claim against the state.

U.S. 729 (2009), unconstitutional. Pl.'s Opp'n at pp. 25–26. However, Plaintiff's reliance on *Haywood* is misplaced because claims brought pursuant to state law do not implicate the Supremacy Clause, and therefore, the *Haywood* decision does not affect the question of whether this Court has proper jurisdiction to hear pendent state law claims.[11] *See Rounds v. Thompson*, 2013 WL 3187074 (N.D.N.Y. June 20, 2013) (citing cases for the proposition that "courts in this District have held that the *Haywood* decision does not affect the question of the district court's jurisdiction to hear pendent state law claims against DOCCS employees and have continued to dismiss those claims under Corrections Law § 24."); *see also Lewis v. Turco*, 2011 WL 1044511, at *2 (W.D.N.Y. Mar. 21, 2011) ("In other words, in *Haywood,* the Supreme Court held that Correction Law section 24 was unconstitutional only insofar as it barred federal section 1983 claims in state court.").

Thus, pursuant to § 24, only the New York State Court of Claims has jurisdiction to hear Plaintiff's pendent claim because Plaintiff has alleged acts that clearly fall within the scope of the Defendants' employment duties. The Second Circuit has held that § 24 bars a plaintiff from bringing state law claims against corrections employees in their individual capacities in federal as well as state court. *Baker v. Coughlin*, 77 F.3d at 15-16. In making such ruling, the Second Circuit has stated that "[i]t is of no significance that § 24(1) refers only to actions in state courts, because a federal court acts essentially as a state court in addressing pendent state law claims." *Baker v. Coughlin*, 77 F.3d at 15. Under these circumstances, the correct jurisdiction for these types of claims rests with the New York State Court of Claims. Therefore, this Court does not have jurisdiction to hear

---

[11] The *Haywood* Court held that New York State, having created courts of general jurisdiction that routinely hear § 1983 actions against all types of state actors, "is not at liberty to shut the courthouse door to federal claims [against corrections officers] that it considers at odds with its local policy." *Id.* at 2117. The Supreme Court found such selective treatment of § 1983 claims brought against corrections officers to be "contrary to Congress' judgment that *all* persons who violate federal rights while acting under color of state law shall be held liable for damages," and therefore, in violation of the Supremacy Clause. *Id.* at 2115 (emphasis in original).

Plaintiff's pendent state law claims and we recommended that Defendants' Motion be **GRANTED** and that Plaintiff's state law claims against all Defendants be **DISMISSED**.

## III.  CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion to Dismiss (Dkt. No. 64) be **GRANTED** in part and **DENIED** in part as follows:

1)    **GRANTED** as to Plaintiff's supervisory liability claims against Defendants Bellamy, LaValley, and Fischer, and these Defendants should be dismissed from this action;
2)    **GRANTED** as to Plaintiff's state law negligence and medical malpractice claims against all Defendants;
3)    **DENIED** as to Plaintiff's Eighth Amendment deliberate indifference claims against Defendants Oliveira and Kullman; and
4)    **DENIED** as to Plaintiff's supervisory liability claims against Defendant Koenigsmann;

**ORDERED**, that the Clerk of the Court attach a copy of the Exhibits that were included in Plaintiff's Motion to Amend (Dkt. No. 47), as Document Numbers 47-3 through 47-8, to Plaintiff's Second Amended Complaint (Dkt. No. 60); and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

<u>**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.**</u>  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date:    March 3, 2014

         Albany, New York

Randolph F. Treece
U.S. Magistrate Judge